IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ELDON ALEXANDER, JR.                                                                    PLAINTIFF

      v.                              CIVIL NO. 10-5030

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                          DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Eldon Alexander, Jr., brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner), denying his claim for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) under the provisions of Title II and Title XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

      On August 1, 2007, Plaintiff protectively filed his applications for DIB and SSI.  Plaintiff alleged an inability to work since March 1, 2007, due to chronic back pain, Raynaud's disease,[1] arthritis, and degenerative disc disease.  (Tr. 114-119, 208).  An administrative hearing was held on February 12, 2009, at which Plaintiff appeared with counsel and testified.  (Tr. 7-53).  Dale A. Thomas, a vocational expert (VE), also testified at this hearing.

      By written decision dated June 29, 2009, the ALJ found that during the relevant time period, Plaintiff's mental impairment of antisocial personality was nonsevere, because it did not cause more than minimal limitation in Plaintiff's ability to perform work activities.  (Tr. 64).

---

[1]Raynaud Phenomenon - Spasm of the digital arteries, with blanching and numbness or pain of the fingers, often precipitated by cold.  Fingers become variably red, white, and blue.  Stedman's Medical Dictionary 1478 (28th ed. 2006).

1

However, the ALJ found that Plaintiff's physical impairments were severe because, singly or in combination, they imposed more than minimal limitations on Plaintiff's ability to perform basic work activities. (Tr. 64). Specifically, the ALJ found Plaintiff had the following severe impairments: "disorder of the back and chronic obstructive pulmonary disease, and Raynaud's disease." Id. After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 65). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work with the following limitations:

> [Plaintiff] cannot perform sustained driving, can only occasionally reach overhead; occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel, and balance; cannot work near unprotected heights or dangerous equipment and machines; cannot work in extreme cold or near vibrations; and [Plaintiff] must avoid concentrated dust, fumes, smoke, chemicals, and noxious gases.

(Tr. 66). With the help of the VE, the ALJ determined that Plaintiff was able to perform work categorized as production work in the Standard Occupational Classification System (Classification No. 51-9199).[2] (Tr. 69). Based on this information, the ALJ ruled that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. Id.

Plaintiff then requested a review of the ALJ's decision by the Appeals Council. (Tr. 4-6). On January 12, 2010, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 8). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 15-16).

---

[2] The ALJ also determined that Plaintiff could return to his past relevant work as a palletizer. (Tr. 68). However, the Commissioner noted and this Court agrees that, considering the vibrations associated with being a palletizer, the limitations imposed on Plaintiff by Raynaud's disease would prevent him from returning to this job. See infra Part IV.C.

**II.     Evidence Presented**

At the administrative hearing on February 12, 2009, Plaintiff testified he was forty-nine years of age and that he received his general equivalency diploma. (Tr. 12). The highest grade of formal education Plaintiff completed was the eleventh grade. (Tr. 158). The record reflects Plaintiff has worked as a palletizer, truss builder, janitor, highway-maintenance worker, forklift operator, and rubber-mat roller. (Tr. 15-22).

Prior to the relevant time period, medical evidence reveals Plaintiff sought treatment for fatigue, headaches, sinusitis, sinus congestion, pneumonia, and tobacco dependency. (Tr. 226-38). Plaintiff also received treatment in conjunction with a conviction for driving while intoxicated. (Tr. 241, 270-76).

The medical evidence during the relevant time period reflects the following. On January 17, 2007, Plaintiff sought treatment from Dr. John Nolen for sinus congestion and back pain that occurred when he could not use the restroom. (Tr. 227-28). Dr. Nolan's examination of Plaintiff revealed no cyanosis, clubbing, or edema of the extremities, and Plaintiff's peripheral pulses were intact in all 4 extremities. Dr. Nolan's report indicates Plaintiff was alert and oriented, his mood and affect were normal, and his mental status was intact. The report further indicates that Plaintiff's gait and station were normal and his neck was supple. Plaintiff reported that he was recently treated for pneumonia and was found to have a white-blood-cell count of 40,000. Plaintiff noted that he smoked about one pack of cigarettes per day and drank about two beers per day. Plaintiff was advised to avoid smoke, dust, and fumes, and encouraged to discontinue the use of tobacco.

On March 13, 2007, Plaintiff again sought treatment from Dr. John Nolen—this time for back pain that radiated down the back of his legs. (Tr. 219, 224-26). Plaintiff advised Dr. Nolen

that he had had the problem since 1985, when he was told he had a deteriorating disc. Dr. Nolen noted that Plaintiff appeared somewhat disheveled and uncomfortable, but was otherwise well developed and well nourished. Plaintiff mentioned to Dr. Nolen that he had been buying pills on the street. The night before, a friend had given Plaintiff a methadone pill, which Plaintiff found to be helpful. (Tr. 225).

Dr. Nolen performed a back exam on Plaintiff that revealed tenderness in the paraspinous muscles in the lumbosacral-spine region. (Tr. 225). Dr. Nolen's records reflect that a straight-leg-raising test was negative; Plaintiff's gait, station, and reflexes were normal; Plaintiff's motor and strength were intact; Plaintiff was alert and oriented to time, place and person; Plaintiff's mood and affect were normal; and Plaintiff's judgment and insight were appropriate. Dr. Nolen diagnosed Plaintiff with a lumbar muscle strain and moderate back pain, for which Dr. Nolen prescribed Prednisone, Flexeril, and Ultram. Dr. Nolen also recommended Plaintiff take a hot bath or shower twice a day and have an MRI taken of his lumbosacral spine.

A MRI was taken of Plaintiff's lumbosacral spine, and Dr. Donald Brown interpreted the results on April 17, 2007. (Tr. 216). The MRI showed degenerative disc disease from T12 through S1, with each disc space showing loss of disc-space height and loss of T2 signal consistent with desiccation. There were end-plate changes seen more prominently at the L4-5 disc-space level and beginning anterior osteophytes at each disc-space level. The scan also showed some mild spinal stenosis, which was most prominent at L4-L5. The MRI did not show any specific nerve-root impingements.

A letter dated October 14, 2007, from Richard Back, Ph.D, of Northwest Arkansas Psychological Group, noted Plaintiff was seen by the group five times in conjunction with a

conviction for driving while intoxicated. (Tr. 241). The letter further noted Plaintiff did not receive treatment for any psychological disorder.

On November 15, 2007, Dr. C.R. Magness performed a consultative, general physical examination on Plaintiff. (Tr. 242-49). The exam revealed that Plaintiff exhibited nearly normal flexion, extension, and rotation of the cervical spine, but only a sixty degree flexion of the lumbar spine (normal is ninety degrees). The results of a straight-leg-raising test were abnormal, but Plaintiff demonstrated the ability to tandem walk and to walk on his heels and toes without limping. (Tr. 246-47). Plaintiff exhibited ninety percent of normal grip strength. He exhibited difficulty squatting and arising from a squat. Dr. Magness reported that no tricep or Achilles reflex could be elicited.

Dr. Magness diagnosed Plaintiff with cervical degenerative disc disease, lumbar degenerative disc disease, right shoulder degenerative disc disease, COPD, Raynaud's Disease, and borderline antisocial personality. Dr. Magness opined that Plaintiff had moderate to severe limitations in the ability to walk, lift, and carry. Dr. Magness also concluded that Plaintiff had moderate limitations on standing and handling. (Tr. 249).

On November 26, 2007, Plaintiff sought treatment at Community Clinic at Saint Francis House. (Tr. 215, 262). Plaintiff stated that he did not attend recommended physical therapy and had missed several follow-up appointments. Plaintiff also explained that he had been seen by a specialist, but had not followed his recommendations due to lack of funds. Treatment notes indicate Plaintiff's thoughts were very "unorganized." (Tr. 262). Plaintiff told the providers at St. Francis that he could not take Ultram, Flexeril, and a sleeping pill because of their side-effects, but stated that morning he had taken two hydrocodone pills. Plaintiff also said that he could not find anyone in town to refill his pain medications. (Tr. 262).

On December 1, 2007, Plaintiff's medical records were forwarded to a non-examining physician, Jim Takach, M.D., for an RFC evaluation. (Tr. 252-59). Dr. Takach reported that Plaintiff retained the ability to perform work at the light exertional level. Specifically, Dr. Takach found that Plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours during an 8 hour day; sit for 6 hours during an 8 hour day; perform unlimited pushing and pulling, including operation of hand and/or foot controls; and only occasionally climb ramps, stairs, ladders, ropes, and scaffolds. Dr. Takach also found that Plaintiff was limited in reaching overhead, and that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation and hazards like machinery and heights.

On January 17, 2008, Plaintiff sought treatment at the Northwest Arkansas Free Clinic. (Tr. 260). Plaintiff complained of constant back pain, trouble walking, and losing his balance. He reported that he sometimes drank and smoked marijuana to lessen the pain. Plaintiff's blood pressure was noted to be 170 over 110. Plaintiff was diagnosed with neck and lower back pain and Raynaud's. A physician recommended a cervical-spine x-ray be performed on Plaintiff.

On January 21, 2008, an x-ray of Plaintiff's cervical spine was taken, and the results were interpreted by Dr. Robert Morris. (Tr. 265). Dr. Morris noted that Plaintiff had spondylosis at C4-C5, C5-C, and C6-C7 with disc space narrowing and spurs at those levels. Dr. Morris further noted that there was no fracture, subluxation, or other acute abnormality.

On February 21, 2008 Plaintiff brought in his previously taken MRI and sought health care at the Northwest Arkansas Free Clinic. (Tr. 264). The examining physician noted the MRI showed degenerative disc disease. The physician observed that Plaintiff had no nerve-root symptoms and that Plaintiff's lungs were clear. Physical therapy was recommended. Plaintiff

told his physician that he was not interested in physical therapy and that he was trying to get disability. (Tr. 264).

**III. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(3), 1382(3)(c). Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

7

gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy, given his age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

IV. Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled, because the ALJ (1) improperly discredited Plaintiff's subjective complaints of pain when determining his RFC and (2) failed to give appropriate weight to Plaintiff's one-time examining physician.  (Doc. 15 at 2).  Conversely, Defendant argues (1) substantial evidence supports the ALJ's RFC finding, (2) the ALJ properly considered Plaintiff's complaints of pain, and (3) the ALJ properly relied on the testimony of the VE.  (Doc. 16 at 4-14).

    A. **Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  Although an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record

as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's alleged mental impairment, the ALJ found Plaintiff did not have a "severe" mental impairment, and that Plaintiff failed to establish any mental limitations with respect to his ability to perform work-related activity.  (Tr. 64-65).  In making this finding, the ALJ properly considered the four broad functional areas set out in the disability regulations for evaluating mental disorders—activities of daily living; social functioning; concentration, persistence or pace; and decompensation.  42 U.S.C., subpt. P, app. 1.

The ALJ noted that Plaintiff's mental impairments did not affect his activities of daily living.  At the hearing, Plaintiff testified that he borrowed his mother's car, drove her to work, went to the Laundromat, and then picked his mother up from work.  (Tr. 34).  He further testified that he sometimes helped his roommate with yard work.  (Tr. 28).

With respect to Plaintiff's social functioning, the ALJ noted that Plaintiff cooperated with his probation officer, testified that he could follow instructions, and had complied with the rules of his release from prison regarding his five years of probation.  (Tr. 65).  Plaintiff also indicated that he had no problem getting along with family, friends, neighbors, or others.  (Tr. 147). Furthermore, Plaintiff reported he gets along pretty well with authority figures.  Id.  Plaintiff has also never been terminated from employment because of problems getting along with other people.  (Tr. 188).

In evaluating Plaintiff's concentration, persistence, or pace, the ALJ found that Plaintiff had no limitations. (Tr. 65). Plaintiff reported that he could clean, do laundry, shop for groceries, and handle money. (Tr. 143-45).

Finally, the ALJ observed that there was no evidence to suggest that Plaintiff had experienced repeated episodes of decompensation of extended duration. (Tr. 65).

Moreover, the Court notes that Plaintiff did not allege a mental impairment in his initial application for benefits. (Tr. 139-59). Plaintiff's failure to list a mental impairment on his initial application for benefits is significant and weighs against his credibility. See Spradling v. Chater, 126 F.3d 1072, 1074 (8th Cir. 1997) (failure to allege disabling mental impairment on application for disability may be considered as credibility factor). Regarding Dr. Magness' unelaborated observation that Plaintiff suffered from borderline antisocial personality disorder, the Court notes that Dr. Magness is not licensed as a mental health professional, see Loving v. Dep't of Health & Human Servs., 16 F.3d 967, 971 (8th Cir. 1994) (opinions outside physician's field of expertise carry little weight). Furthermore, Dr. Magness' diagnoses of borderline personality disorder was based upon Plaintiff's report that he had been diagnosed with it in the past. Finally, Plaintiff did not seek treatment for this impairment during the relevant time period.

After reviewing Plaintiff's activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation, the ALJ concluded that Plaintiff's medically determinable mental impairment causes no more than mild limitation and is nonsevere. (Tr. 65). This Court finds the ALJ's conclusion regarding Plaintiff's mental impairment is supported by substantial evidence.

With regard to Plaintiff's back impairment, the record reveals that Plaintiff reported experiencing back pain when he sought treatment from Dr. Nolen in January of 2007. (Tr. 227-28). However, Plaintiff's complaints of back pain at that time were limited to times when he had trouble using the restroom. A couple months later, on March 21, 2007, Plaintiff again visited Dr. Nolen. During this visit, Plaintiff complained of low back pain that radiated to the back of his legs since 1985, when he was allegedly told he had a deteriorating disc.

Dr. Nolen reported that despite Plaintiff's complaints of back pain, his straight-leg-raising test was normal, he exhibited no cyanosis, clubbing or edema of the lower extremities, and his peripheral pulses were intact in all four extremities. (Tr. 219). Dr. Nolan further reported that Plaintiff's gait and station were normal, his reflexes were normal, and his motor strength was intact. Dr. Nolen concluded that Plaintiff exhibited only moderate back pain. Thus, the examination of Dr. Nolen, Plaintiff's treating physician, contradicts Plaintiff's later complaints of severe and disabling back pain.

The next medical records related to Plaintiff's back pain are the results of a MRI taken on April 17, 2007. (Tr. 216). The ALJ noted that the report of Dr. Brown indicated the MRI showed degenerative disc disease and mild spinal stenosis, but did not show any nerve-root impingements. A later x-ray showed spondylosis at C4-C5, C5-C6, and C6-C7 with disc-space narrowing and spur at those levels; however, as the ALJ noted, the x-ray revealed no fracture, subluxation, or other acute abnormality. (Tr. 67).

On November 15, 2007, Plaintiff received treatment from his one-time examining physician, Dr. Magness. (Tr. 242-49). Dr. Magness opined that Plaintiff had moderate to severe limitations in the ability to walk, lift, and carry, and Plaintiff had moderate limitations on standing and handling. (Tr. 249). Following Dr. Magness' report, Plaintiff's medical records

were forwarded to Dr. Takach for evaluation, who concluded Plaintiff's back pain would allow him to work at light exertional limits. (Tr. 252-59). Dr. Takach also added other limitations, taking into account Plaintiff's other diagnoses, including COPD and Raynaud's.

Plaintiff argues on appeal that the ALJ improperly credited the opinion of a nonexamining physician, Dr. Takach, over Plaintiff's consultative physician, Dr. Magness. (Doc. 15 at 15). However, the ALJ gave ample justification for her decision to do so. The ALJ noted that both Dr. Magness' opinion and Plaintiff's allegations regarding the limiting effects of his back disorder and COPD were undercut by other medical evidence. (Tr. 67). Specifically, the ALJ noted that in a follow up to the January 21, 2008 x-ray, Plaintiff went to the Northwest Arkansas Free Clinic, and the physician there noted that "he was not interested in physical therapy and had no nerve root symptoms." (Tr. 67, 264). The physician also recorded that Plaintiff said he was "trying to get disability." (Tr. 264).

Plaintiff's actions and the record are consistent with Plaintiff's statement that he was trying to get benefits instead of following recommendations to alleviate his impairments. The ALJ noted that Plaintiff had been seen by a specialist but had failed to follow the specialist's recommendations. (Tr. 67, 262). Plaintiff did not take the medication prescribed to him, but bought pills on the street. (Tr. 225, 262). Further, even though Plaintiff was diagnosed with COPD and encouraged to quit smoking, he continued to smoke cigarettes and marijuana. (Tr. 26, 228, 260). Finally, Plaintiff purchased painkillers, marijuana, cigarettes, and alcohol, while at the same time arguing that he could not afford medical treatment. (Tr. 26, 225, 260, 262).

Social Security regulations require claimants to follow prescribed treatment that can restore the ability to work. 20 C.F.R. § 404.1530; see also Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) (holding that an ALJ may discount a disability claimant's subjective

complaints of pain based on the claimant's failure to pursue regular medical treatment). The ALJ found in this case that Plaintiff's subjective complaints of pain and the opinion of Dr. Magness were undermined because Plaintiff's failure to follow prescribed treatments indicated that his impairments were not as limiting as alleged. (Tr. 67).

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. Plaintiff reported that he was able to do some household chores for short periods of time; that he could dress and bathe himself; and that he could prepare his own meals. (Tr. 142-43, 182). The record also reveals that during the relevant time period, Plaintiff reported he helped with yard work, drove, and did laundry. (Tr. 28, 143). Plaintiff also reported in a Function Report dated January 10, 2008, that he either rode or walked to the store to shop once or twice a week. (Tr. 185). This level of activity belies Plaintiff's complaints of pain and limitation, and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. See, e.g., Cruze v. Chater, 85 F.3d 1320, 1324 (8th Cir. 1996) (the ability to mow the lawn, care for animals, shop, do odd jobs, and visit town tends to prove claimant was able to work).

Plaintiff complains of COPD, which in turn limits his physical abilities. As indicated earlier, however, Plaintiff continued to smoke at least half a pack of cigarettes a day. Plaintiff's continued smoking amounts to a failure to follow a prescribed course of remedial treatment. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits). This is not a case in which the correlation between claimant's smoking and claimant's impairment is not readily apparent. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (noting that there is no evidence that claimant's muscoskeletal complaints would be affected by smoking cessation). To the contrary,

there is no dispute that smoking has a direct impact on Plaintiff's pulmonary impairments.  Thus, the ALJ appropriately considered Plaintiff's failure to stop smoking in making her credibility determination.  See Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000).

The record indicates that Plaintiff is generally able to care for himself.  The record suggests that Plaintiff is not very active, yet he is able to complete chores at home when asked.  (Tr. 178) (cleaned up apartment for landlord).  Additionally, the record shows that Plaintiff's reliance on his mother for transportation is due to his license being revoked, rather than on any inability to drive.  (Tr. 34, 144, 185).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in substantial gainful activity.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints regarding his back pain and COPD were not totally credible.  See Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008).

     **B.**    **RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir.

2003). However, "it is the ALJ's function to resolve conflicts among 'various treating and examining physicians.'" Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In finding Plaintiff able to perform light work with limitations, the ALJ considered Plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluations of non-examining medical professionals. Plaintiff contends the ALJ improperly disregarded Dr. Magness' opinion in favor of Dr. Takach's RFC assessment. In examining the medical records, Dr. Takach noted that there were no demonstrated limits in the records that would preclude Plaintiff's ability to perform light work activity. Dr. Takach added additional limitations beyond the twenty pound limit on lifting and carrying that is consistent with light work. See 20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Takach found Plaintiff had limited overhead reaching with his right arm, and that he could only occasionally climb, balance, stoop, kneel, crouch, or crawl. In addition, Dr. Takach advised that Plaintiff should avoid hazardous machinery and heights. (Tr. 255-56).

In deciding not to give controlling weight to Dr. Magness' opinion that Plaintiff was seriously limited, the ALJ noted that Dr. Magness' findings were not consistent with the record as a whole. Prosch v. Apfel, 201 F.3d 1010, 1012-14 (8th Cir. 2000) (ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). With regard to Dr. Nolen's treatment notes, the record reflects that on January 17, 2007, Plaintiff was only experiencing back pain when he had trouble going to the bathroom. (Tr. 227). Dr. Nolen's treatment notes from March 13, 2007 indicate that Plaintiff's back pain was only moderately debilitating. (Tr. 225). And, after treating

Plaintiff, Dr. Nolen did not place any restrictions on him that contradict the ALJ's RFC assessment.

The record also shows that Plaintiff was able to participate in various activities including doing yard work, cooking, cleaning, and performing tasks around his apartment during the relevant time period. Although Dr. Magness placed moderate to severe limitations on Plaintiff's ability to walk, lift, and carry, a treating physician's opinion is generally entitled to more weight than the report of a one-time consulting examining doctor. Prosch, 201 F.3d at 1012-13. The evidence in this case reveals that the ALJ relied upon treating and other medical expert opinion evidence in determining Plaintiff's RFC. The ALJ was not required to accept the conclusions of Dr. Magness without reservation, particularly when his findings were contradicted by those of Dr. Nolen, Plaintiff's treating physician. Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (holding that ALJ's RFC assessment was supported by substantial evidence where ALJ based the assessment on the evaluations of the plaintiff's treating physicians). In this case, the ALJ's RFC finding is consistent with the medical findings of both Dr. Nolen and Dr. Takach. A subsequent review of the evidence by Steve Owens, M.D., yielded the same result. (Tr. 269).

The evidence of record shows Plaintiff consistently failed to follow the advice of treating and examining doctors. Plaintiff was advised to stop smoking, but failed to do so. (Tr. 26, 228). Plaintiff refused physical therapy specifically targeted to relieve his back pain. (Tr. 262, 264). Plaintiff's failure to follow treatment recommendations weighs heavily against his claim for disability benefits and SSI. Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005); Guillams, 393 F.3d at 802.

Based on the foregoing discussion relating to the medical evidence and Plaintiff's activities, the Court finds substantial evidence of record to support the ALJ's RFC assessment.

### C. Hypothetical Question to the Vocational Expert:

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. In order for vocational-expert testimony to be substantial evidence to support a decision, the hypothetical must reflect the physical and mental impairments of the claimant, his age, education and past work experience. See 42 U.S.C.A. § 423(d)(1). A hypothetical, however, need only include impairments that are supported by the record and that the ALJ accepts as valid. Prosch, 201 F.3d 1010 at 1015; see also Clay v. Barnhart, 417 F.3d 922, 931 (8th Cir. 2005) (noting that the ALJ did not err in omitting additional restrictions not supported by evidence).

In his brief, the Commissioner conceded Plaintiff's argument with respect to the ALJ's finding that Plaintiff could return to his past relevant work. (Doc. 16 at 11). Specifically, the Commissioner conceded that the RFC limitation with respect to vibration suggests the inability to perform work with a pallet jack. This Court agrees that Plaintiff is incapable of returning to his past relevant work; however, a finding that a plaintiff cannot return to past relevant work does not mean he is disabled. If a plaintiff is able to any other work, considering his RFC, age, education, and work experience, a finding of "not disabled" is appropriate. 20 C.F.R. §§ 404.1520, 416.920.

In this case, the Court finds the hypothetical the ALJ posed to the VE fully set forth the impairments that the ALJ accepted as true and were supported by the record as a whole. See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996). Taking into account the properly listed impairments of Plaintiff, the VE testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform work categorized as production work in the Standard Occupational Classification System at

number 51-9199.  (Tr. 49).  The VE gave a specific example of a job that Plaintiff was able to perform, bench assembler, which is listed as number 706.684 in the Dictionary of Occupational Titles.  The ALJ noted that work in that category is considered unskilled, with a Specific Vocational Preparation of 1 or 2.  (Tr. 69).

Because the VE, in response to a hypothetical that captured the consequences of Plaintiff's limitations, described readily available jobs Plaintiff could perform, the Commissioner successfully demonstrated Plaintiff's ability to perform jobs in the national economy.  See Reed v. Sullivan, 988 F.2d 812, 815–16 (8th Cir. 1993) (describing burden of proof).  Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff was not disabled.  (Tr. 69); see also Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.   Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.

DATED this 28th day of September, 2011.

/s/ *Erin L. Setser*
   HON. ERIN L. SETSER
   UNITED STATES MAGISTRATE JUDGE